1819.

Beck
vs
Thompson & Maria

---

BECK vs. THOMPSON & MARIS.

DECEMBER.

ERROR to *Prince-George's* County Court. *Assumpsit* on a promissory note drawn by *S. W. Beck* on the 14th of March 1810, for $1569 27, payable 21 months after date to the defendant, (now appellant,) or order, and by him endorsed to the plaintiffs, (the appellees.) The declaration contained two counts; the first on the note, in which the demand is stated to have been made on the drawer, "afterwards, and after the end and expiration of the said 21 months in the said note mentioned; that is to say, on the 14th of December 1811," and notice to the defendant, &c. The other count was for money lent and advanced. The general issue was pleaded; and at the trial the plaintiffs proved the hand-writing of the drawer of the note, and then offered in evidence, by a competent witness, that he had seen the defendant write and sign his name, and was acquainted with his hand-writing, and that he believed that the endorsement on the note was in his hand-writing. He also swore another witness, *James S. Morsell*, who proved that the note in question was brought, together with another note drawn and endorsed by the same persons, and put into the hands of the witness sometime before the note in suit became due, and remained in his hands for a considerable time after it became due, and that the witness had no knowledge of the money due on it ever having been de-

In an action on a promissory note dated the 14th of March 1810, and payable 21 months after date, a count in the declaration on the note, stated the demand of payment to have been made "afterwards, and after the end and expiration of the said 21 months; that is to say, on the 14th of December 1811?" —Held, that this count was erroneous, and that no recovery could be had on it.
It is not necessary to declare on a promissory note, but it may be given in evidence on a count for money lent and advanced, where there is a privity between the plaintiff and defendants, as that of a payee and drawer and endorsee, and his immediate endorser.
If an endorser, with the knowledge that the holder of a pro-

missory note has not used due diligence in demanding payment of the maker, promise to pay the amount of the note, such promise is a waiver of the holder's neglect to give the notice.
It is an established maxim of our law, equally applicable to civil and criminal cases, that *ignorantia legis non excusat*. Per *Dorsey*, J.

1819.

Beck
vs
Thompson & Martis

manded of *S. W. Beck*, the drawer; that some days after it became due, the defendant came to the office of the witness, and said that the witness need not have sent *Nicholls* to his house to give him notice that the note was not paid, that he knew that the notice of nonpayment was not properly given, and not given for several days after the note was due, and that the demand was not made of the drawer. That to this the witness replied, that that was a matter to be settled by a court and jury, if necessary, hereafter, and he would endeavour to prove that due notice was given. The defendant thereupon told the witness that it was his intention to pay the notes; that he was bound to pay his son's debts, but wanted time. To this the witness replied, that he could have time if he gave security by a deed of trust on his land. The defendant asked what time? and was told as much time as it would take to recover by a suit at law, which the witness supposed to be 18 months. To this the defendant agreed; and it was also agreed that *William S. Nicholls* should be the trustee in the deed. A day was appointed to meet at *Bladensburgh* to execute the deed. The witness met there on that day. The defendant was not there, but his son was. The defendant afterwards came and told witness he could not execute the deed unless he could get a longer indulgence, as long a time as he could get if a suit was brought in the county court, and afterwards removed to the court of appeals. The witness refused to give this indulgence, and immediately thereafter ordered this suit to be brought. The witness did not recollect that he showed the note to the defendant, but the witness had no other notes except those two, and the conversation related to two notes due to the plaintiffs. The plaintiffs offered no other proof relative to a demand of the amount of the note of the drawer, or of notice of nonpayment to the defendant, or of the endorsement of the note. The defendant then prayed the opinion of the court to the jury, that this testimony was not sufficient to entitle the plaintiffs to a verdict. This opinion the Court, [*Johnson*, Ch. J. and *Plater*, A. J.] refused to give, being of opinion, that if the jury should find from the evidence that the note was endorsed by the defendant, and that with a knowlege that the drawer had not been duly called on for payment, and that notice of the nonpayment had not in due time been communicated to the defendant, and that in consequence thereof he was not in law answerable for the note; yet, if with this knowledge they should find that he promised to pay the same, that then the want of notice of the nonpayment by the drawer did not release him from the claim, and that the plaintiff was entitled to recover in that event in this action. The defendant excepted; and the verdict and judgment being against him, he brought a writ of error to this court.

The cause was argued at the last term before CHASE, Ch. J. and MARTIN, and DORSEY, J.

*Ridout*, for the Plaintiff in error, contended that the opinion of the court below was erroneous on two grounds—1. Because they did not grant the defendant's prayer; and 2. Because the opinion they gave the jury was incorrect.

1. The endorser is not liable except where the drawer has made default. *Lambert vs. Pack*, 1 *Salk.* 127. *Goodall vs. Dolley.* 1 *T. R.* 712, 713. The holder must have the note or bill with him at the time he makes the demand. *Chitty on Bills*, 287, *(note a.)* If the note cannot be given in evidence under the *first* count in the declaration, it cannot under the *second* count. *Carey vs. Gerrish*, 4 *Esp. Rep.* 9. *Chitty on Bills*, 375. The promise by the defendant was without consideration, because he was under no obligation to pay the note—no legal notice having been given to him. It was therefore a promise to pay the debt of another, and not binding, because not reduced to writing as required by the statute of frauds. *Wain vs. Warlters*, 5 *East*, 10. The promise was made by the defendant under an impression that he was bound to pay the debt. It was made, therefore, under a mistake. *Borradaile vs. Lowe*, 4 *Taunt.* 93. If there was a promise it was only conditional, which condition was not performed. *Goodall vs. Dolley*, 1 *T. R.* 713, 714. If the promise was effective, it only revived the note, and kept it still subject to every principle applicable to such notes. *Co. Litt.* 303. 1 *Chitty's Plead.* 248. There is no allowance stated in the declaration for the three days of grace. Months in reference to notes are calendar months. *Chitty on Bills*, 277. *Brown vs. Harraden*, 4 *T. R.* 148. A presentment of the note before the expiration of the three days of grace is void. 1 *Esp. Dig.* 262. *Rushton vs. Aspinall*, 2 *Doug.* 679. It is not pretended that any notice of nonpayment was given to the endorser, or that any demand was made on the drawer. This being the case, a promise to pay did not supersede the want of such notice and demand. *Phillips vs. M'Curdy*, 1 *Harr.* & *Johns.* 187. *Steele vs. French*, in the General Court at October term 1802. *Russell vs. Langstaffe*, 2 *Doug.* 515.

*Taney*, for the Defendants in error. The case of *Steele vs. French* was, that if the promise was made with ignorance of the facts, it did not bind the defendant. But it is insisted that ignorance of the law is no excuse. *Bilbie vs. Lumley*, 2 *East*, 469, 471. *Stevens vs. Lynch*, 12 *East*, 37. A promise to pay, under the circumstances of this case amounted to a waiver of notice. *Rogers vs. Stephens*, 2 *T. R.* 713. *Lundie vs. Robertson*, 7 *East*, 231. *Porter vs. Rayworth*, 13 *East*, 417. *Chitty on Bills*, 252, *(note g.)* *Gibbon vs. Coggon*, 2 *Camp.* 188. *Taylor vs. Jones*, *Ib.* 105. *Stevens vs. Lynch*, *Ib.* 332. *Wilkes vs. Jacks*, *Peake's Cas.* 202. *Hopley vs. Dufresne*, 15 *East*, 275. As to the declaration, the notice is sufficiently alleged. If the words under the *scilicet* were rejected, the averment would be sufficient. If the first count is bad, the second count is good. *Chitty on Bills*, 154, 375.

*Magruder*, in reply, cited *Blessard vs. Hirst*, 2 *Burr.* 2670. *Farmer vs. Arundel*, 2 *W. Blk. Rep.* 824. 2 *Evans's Ess.* 14.

*Curia adv. vult.*

At this Term the Judges delivered their opinions *seriatim.*

MARTIN, J. This was an action on the case instituted by *Edward Thompson* and *Richard Maris*, in *Prince-George's* county court, to recover the amount due on a promissory note passed by *Samuel W. Beck* to *James Beck*, and endorsed by *James Beck* to the plaintiffs. The note was dated the 14th of March 1810, and was made payable 21 months after date. At the trial of the cause the plaintiffs offered evidence to prove the hand-writing of *Samuel W. Beck*, the drawer, and *James Beck*, the endorser, and that some days after the note became due, *James S. Morsell*, the agent of the plaintiffs, called on *James Beck* for payment of the same; that *James Beck* then informed the agent, he *(Beck,)* knew notice of nonpayment had not been properly given, that it had not been given for several days after the note became due, and that no demand had been made on *Samuel W. Beck*, the drawer; but that it was his intention to pay the note; that he was bound to pay his son's debts, but wanted time. That it was then agreed between the said agent, and *James Beck*, that *Beck* should give a deed of trust on his land as security for the payment of the money due on the note, and that further time should be given him for the payment. The deed of trust, however, was never executed; and no other evidence was offered by the plaintiffs relative to the demand of the amount of the note of the drawer, or of notice of nonpayment to the defendant. The counsel for the defendant prayed the instruction of the court to the jury, that the testimony in the cause was not sufficient to entitle the plaintiffs to a verdict; which instruction the court refused to give, being of opinion, and so directing the jury, that if they should find from the evidence that the note was endorsed by the defendant, and that he, having a knowledge that the drawer of the note had not been duly called on for payment, and that notice of the nonpayment had not in due time been communicated to the defendant, who in consequence thereof knew that in point of law he was not answerable for the note; yet if with this knowledge, they should find *that he pro-mised to pay the same* as set forth, that the want of notice of the nonpayment by the drawer did not release him from the claim, and the same can be recovered in this action. It is now for the consideration of this court, whether the opinion and direction thus given to the jury were erroneous. The declaration in this case contains two counts, the *first* on the promissory note, the *second* for money lent and advanced. The *first* count is certainly erroneous, and the plaintiffs can take nothing under it. It states the de-

mand to have been made on the drawer for payment on the 14th day of December 1811, three days before the note became due, according to the established rules of law. It only remains to be considered if they were entitled to recover under the *second* count.

To make the endorser of a promissory note answerable to the holder, it is generally necessary that there should be a demand on the drawer, after the note becomes due, for payment, and a notice of nonpayment by him should be regularly given in due time to the endorser. But this is a privilege to the endorser. It is for his benefit alone, and he may either avail himself of this privilege, or waive it at his pleasure. If with a knowledge of the facts that no demand has been made on the drawer, and that notice of nonpayment has not been regularly given to him, he still acknowledges the note to be due, and promises to pay it, he waives the privilege given by law for his benefit, and is *quo ad hoc*, in the same situation as if the demand and notice had been regularly proved. If then the *first* count in the declaration had been correct, and the jury were satisfied from the evidence that the defendant did promise to pay the amount of the note, having at that time a knowledge of the facts that no legal demand had been made on the drawer for payment, or legal notice of his nonpayment given to the endorser, the plaintiffs might have recovered on that count, although no proof was offered of a demand on the drawer, or legal notice of his nonpayment to the endorser. If then the finding of these facts by the jury would have authorised a verdict in favour of the plaintiffs, on the *first* count, had it been correctly drawn, I think the authorities will justify the court in considering them sufficient to sustain the action on the *second* count. It is laid down by *Chitty on Bills of Exchange*, and the position supported by many other authorities, that it is not necessary to declare on a promissory note between the original parties to it, but that in an action for money lent, the same may be given in evidence; as in an action at the suit of a payee of a bill against the drawer, and in an action at the suit of a payee of a note against the maker, they being evidence of money lent by the payee to the drawer of the one, and the maker of the other. It is also proper in an action at the suit of the endorsee against his immediate endorser, and for this plain and evident reason, that in point of law the endorser of a promissory note, is to his immediate endorsee considered as the maker of a new note for a valuable consideration. I think the court did right in submitting the evidence to the jury, for them to ascertain if the defendant had made a promise to pay the note with a knowledge of the facts, that a legal demand had not been made on the drawer, and that notice of nonpayment had not been regularly given to him, and in their direction, to find a verdict for the plaintiffs, if these facts were proved to their satisfaction. I am therefore of opinion that the judgment of the court below be affirmed.

1819.

Beck
vs
Thompson & Ma-
ris

DORSEY, J. The declaration in this case contains two counts. In the *first* it is averred that *Samuel W. Beck*, on the 14th of March 1810, made his promissory note in favour of the defendant, or order, for $1569 27, payable twenty-one months after date, and that the defendant endorsed the said note to the plaintiffs, who after the end and expiration of the said 21 months, that is to say, on the 14th of December 1811, shewed and presented the said note, with the endorsement thereon, to the said *Samuel W. Beck*, and requested payment thereof, but that he refused to pay the same, of which the defendant afterwards, to wit, on the day and year aforesaid, had notice. The *second* count is for money lent and advanced by the plaintiffs to the defendant. It appears by the bill of exceptions, among other things, that the plaintiffs never did demand of the maker the payment of the money due on the note, and the defendant, in a conversation with the plaintiffs' agent, after admitting this fact, and that notice of nonpayment had not been duly communicated to him, declared his intention to pay the amount of the note. The court below instructed the jury that they ought to find a verdict for the plaintiffs, if they should believe that the defendant promised to pay the amount of the note, under a knowledge of the following circumstances: *First*, that the maker was not in due time called on for payment. *Secondly*, that due notice of nonpayment was not given to the defendant; and *Thirdly*, that the laches of the plaintiffs had extinguished their claim against the defendant. To this opinion the counsel for the defendant excepted.

I am of opinion that the *first* count in the declaration is erroneous, and of course no recovery can be had thereon. The note stated in the record was not payable before the 17th of December 1811; until that time no demand of payment could be made; and as the demand of payment, and notice to the defendant of the nonpayment, are averred to have taken place at a time when the amount of the note was not demandable, the plaintiffs have failed to show any legal claim against the defendant. The authority of *Rushton vs. Aspinall, Douglass*, 679, is decisive on this point.

Let us examine the opinion of the court with reference to the *second* count. It has been established by a series of authorities, that it is not necessary to declare on a promissory note, but that the same may be given in evidence on a count for money lent and advanced; the statute of 3 and 4 *Anne, ch.* 9, which enables the holder to declare on the note, having been construed as conferring only an additional or cumulative remedy. But this doctrine does not apply to cases where there is no privity between the plaintiff and defendant, as between endorsee and drawer. *Chitty on Bills*, 376. *Buller's N. P.* 137. *Story vs. Atkins*, 2 *Strange*, 719. As there is a privity in this case between the plaintiffs, who are the endorsees, and the defendant, their immediate endorser, the former are entitled to recover under the money count, unless they have lost their remedy by their laches.

1819.

Beck
vs
Thompson & Maris

It cannot be questioned that it is the duty of the holder of the note, if he wishes to have recourse to the endorser, to demand payment of the note when it becomes due, and to give notice of the nonpayment to the endorser. The law casts this obligation on the holder in order that the endorser may take the necessary measures to secure himself against loss; if the holder neglects to do this, the law presumes that the endorser is thereby prejudiced. The rule was adopted for the benefit and security of the endorser, and he may of course, if he thinks fit, waive the consequences of the holder's neglect; and it has been often decided that if an endorser, with the knowledge that the holder has not used due diligence in demanding payment of the maker, promise to pay the amount of the note, such promise shall amount to a waiver of the holder's irregularity. *Chitty on Bills,* 250. *Lundie vs. Robertson,* 7 *East,* 231.

This view of the case is not inconsistent with the doctrine established by the case of *Rushton vs. Aspinall,* reported in *Douglass.* That case proceeds on the ground that a plaintiff must in all cases state a sufficient cause of action in the declaration; and therefore, when the holder declares on a note in a suit against the endorser, he must state a regular demand on the maker for payment, and notice of the nonpayment to the endorser. But what shall be deemed sufficient evidence of those circumstances, or how far the endorser has dispensed with the necessity of their being proved, or has estopped himself from controverting the truth of those averments, are considerations entirely distinct from all questions of pleading.

I must dissent from so much of the opinion of the court below as declares that the promise of the defendant was not obligatory, unless he knew at the time that he was discharged from all liability by the laches of the plaintiffs. It is an established maxim in our law, equally applicable to civil and criminal cases, that *ignorantia legis non excusat.* A different principle would be introductive of much confusion and uncertainty. *Bilbie vs. Lumley,* 2 *East,* 471. *Doctor & Student,* 97, 79, 251. *Stevens vs. Lynch,* 12 *East,* 38. *Lundie vs. Robertson,* 7 *East,* 231. But as this part of the opinion, though erroneous, operated to the prejudice of the plaintiffs only, by increasing the burden of proof on their part, there can be no reason for reversing the judgment on an exception tendered by the defendant.

I am of opinion that the judgment of the county court ought to be affirmed.

CHASE, Ch. J. In considering this case certain principles have been adverted to. The law is established, that to sustain a suit on a promissory note by the endorsee against the endorser, it is incumbent on the plaintiff to prove a demand by the endorsee of the maker of the note when due, and if not paid, notice of nonpayment to the endorser in due time. The judgment of the court below is grounded on the admis-

1819.

Beck
vs
Thompson & Maris

sion that such demand was not made, and that such notice was not given; the court being of opinion, that the want of notice of nonpayment was supplied or waived by the promise of the defendant, if he had knowledge that such demand was not made nor notice given, and that he knew he was not answerable in point of law in consequence thereof; and if the jury should find such facts, that the action can be sustained,

The liability of the endorser of a promissory note is qualified or conditional, his engagement being to pay the money if the maker did not, and the endorser cannot be resorted to unless such demand is alleged and proved. The liability of the endorser to pay the money rests on proof of demand, and notice of nonpayment in due time, and his promise cannot amount to a waiver of proof of demand; because, not being legally liable to pay the money when the promise was made, his promise was made without consideration, and a *nudum pactum*, on which no action can be supported.

Upon recurrence to the proof in the case, it appears there was no evidence given which was legally sufficient to warrant the jury in finding a promise made by the defendant to pay the money to the plaintiffs, nor is there any evidence that he knew the legal consequences of the laches. It is only proof of a proposition for a compromise which was not effected. The defendant's saying that it was his intention to pay the note, and that he was bound to pay his son's debts, could not amount to a promise, nor create any obligation on the defendant to pay the money due on the note in question. Whatever might be the intention of the defendant, he was certainly mistaken in supposing he was bound to pay his son's debts. His intention to pay arose on his supposed liability to pay his son's debts.

Every endorsement is in the nature of a new bill of exchange for some purpose. There must be a demand on the person who undertakes to pay, and notice of nonpayment in due time; and between the endorsee, and his immediate endorser, there may be an inquiry into the consideration.

Admitting, for the sake of argument only, that on the common law count for money lent in this case the endorsement is *prima facie* evidence of money lent by the endorsee to the endorser, yet such presumption may be repelled and avoided by proof. The evidence adduced in this case shews that there was not any money lent. The common law count can derive no aid from the promissory note as a negotiable instrument, but the proof, which is applicable to it, must be such as will support it as an independent count. In this case there is no evidence to prove that there had been any money lent or any assumption, and if there was any assumption, it must have been for the debt of another— a debt due from his son to the plaintiffs—and not being in writing, is not binding on the defendant. At common law, and before the statute of *Anne*, a promissory note was a chose in action, and not assignable so as to enable the as-

signee to bring a suit in his own name; and the suit in this case cannot be supported without evidence of money lent by the endorsee to the endorser.

I am of opinion that the judgment of the court below i s erroneous and ought to be reversed.

JUDGMENT AFFIRMED.