BENJAMIN H. LAMBERT AND LEWIS MCKENZIE, PLAINTIFFS, *v.* WILLIAM GHISELIN.

In an action upon a bill of exchange brought by the holder, residing in Alexandria, against the indorser, a physician residing in Maryland, the bill upon its face not being dated at any particular place, it was sufficient proof of due diligence to ascertain the residence of the indorser before sending him notice of the dishonor of the bill, that the holder inquired from those persons who were most likely to know where the residence of the indorser was.

Where a notice is sent, after the exercise of due diligence, a right of action immediately accrues to the holder, and subsequent information as to the true residence of the indorser does not render it necessary for the holder to send him another notice.

THIS case came up from the Circuit Court of the United States for the District of Maryland, upon a certificate of division in opinion between the judges thereof.

It was a suit brought by Lambert and McKenzie, carrying on business as partners in Alexandria, Virginia, against William Ghiselin, the indorser of the following bill of exchange.

[Stamp 75 cents.]                              *April* 21, 1846.

Ninety days after date pay to the order of William Ghiselin fifteen hundred dollars $\frac{00}{100}$, value received, and charge the same to account of your obedient servant,

ROBERT GHISELIN.

To JOHN R. MAGRUDER & SON, *Baltimore.*

(Indorsed,) John R. Magruder & Son.
(Indorsed,) William Ghiselin, Lambert & McKenzie.
Pay to the order of C. C. Jamison, Cashier.

JOHN HOFF, *Cashier.*

Jamison was the Cashier of the Bank of Baltimore, who

caused the bill to be presented, when due, to the acceptors in Baltimore, and to be protested for non-payment.

In November, 1847, the cause came on for trial in the Circuit Court, when the plaintiffs offered the bill in evidence, together with the notarial protest.

The plaintiffs then further gave in evidence, by William H. Lambert, a competent witness, that on the 24th day of July, 1846, he was the assistant clerk in the counting-house of the plaintiffs, who were then, and still are, doing business in Alexandria, now in the State of Virginia, under the name and style of Lambert & McKenzie ; and that on the said 24th day of July, 1846, the witness saw inclosed in a letter addressed to the defendant, at Nottingham, Maryland, the original notice, whereof the paper marked A is a true copy.

### Copy of Notice of Protest.

(Copy A.)                    "BALTIMORE, *July* 23, 1846.

" MR. WILLIAM GHISELIN : — Sir : Please to take notice that Robert Ghiselin's bill of exchange on John R. Magruder & Son, for $1,500 (by them accepted), dated April 21, 1846, and payable ninety days after date to your order, and by you indorsed, is delivered to me by the President, Directors, and Company of the Bank of Baltimore, to be protested for non-payment ; and the same not being paid, is protested, and will be returned to the said president, directors, and company, and that you are held liable for the payment thereof.

"SAMUEL FERÑANDIS, *Notary Public.*"

That said witness on said day deposited the said letter, inclosing the said notice in the said post-office, at said Alexandria, in time to go in the mail of that day.

And the plaintiff further gave in evidence, by Captain Thomas Travers, a competent witness, that he arrived in his vessel at the port of Alexandria aforesaid, early in the morning of the said 24th day of July, 1846 ; and that immediately after his arrival at the wharf, the plaintiff, Lambert, inquired of him if he knew the residence of the defendant ; to which said witness replied, Nottingham, — that he resided at Nottingham, and a post-office was kept there.

And further gave in evidence by said witness, that he had been engaged from the year 1821 to 1842 in sailing a vessel, in which the plaintiffs were part owners, between Nottingham and Alexandria, previous to 1842 ; that during said time no other vessel was engaged regularly in trading between said places, except a vessel commanded by one Isaac Wood, in

which the plaintiffs were also interested ; that after 1842 there was no vessel regularly trading between Alexandria and Nottingham, which last place is a small village on the head-waters of the Patuxent River, in Prince George's County, Maryland ; and that up to the time when the witness ceased to trade there, the defendant resided in Nottingham, where he practised medicine, and had kept house there, and the said Travers had never heard of his removal from thence ; that he, the defendant, was raised in the immediate neighbourhood of Nottingham, where his brother, Robert Ghiselin, and his mother and other relations resided.

And also further gave in evidence by said Travers, that he was, in July, 1846, well acquainted in Alexandria, and knows of no one in said town who was better qualified to furnish information, or was more likely to have furnished information, as to the residence of the defendant, than himself ; that in 1842 the vessel owned by the witness and Lambert & McKenzie, and commanded by witness, as well as the vessel commanded by Isaac Wood, ceased to trade between Alexandria and Nottingham, and commenced trading or running regularly between Alexandria and Baltimore city, in which trade they have been ever since constantly engaged, as was well known to the plaintiffs ; that since 1842 the witness had never been at Nottingham, nor seen the defendant.

The plaintiffs further gave in evidence, by Isaac Wood, a competent witness, that he has resided for a great many years in Alexandria, and is well acquainted with the inhabitants thereof, and he knows of no one in said town to whom the plaintiffs could have applied for information as to the residence of the defendant more likely than Captain Travers to afford correct information, or himself, who was absent at the time.

And said witness, Thomas Travers, on cross-examination, repeated, that he believed the defendant in 1842 resided in Nottingham, and was very confident that he had seen the defendant there on several occasions in the course of the year 1840, but could not affirm positively that he saw the defendant there at any time during the year 1839, or 1841, or 1842.

And the defendant also proved, by Thomas S. Alexander, that he is well acquainted with the defendant, being connected with him by marriage, and knows the defendant moved from Nottingham in the summer of 1839 ; that he first went to the city of Annapolis, distant about thirty miles from Nottingham, proposing that he should remain there until he had found a place of permanent settlement, and that, having purchased a farm on West River, he took up his residence there towards

the end of 1839 ; that said witness had frequently been at the residence of defendant on West River, and, from his (witness's) knowledge of the surrounding country, would have been prepared to affirm that "West River" post-office was the post-office of defendant ; and, moreover, that he has accompanied the defendant to the said named post-office for his (defendant's) letters, and has frequently, prior to the making and indorsement of the bill on which this action is founded, been informed by said defendant that his post-office was "West River" ; that "West River" post-office is within two miles of the residence of the defendant, and Nottingham is distant from said residence at least twelve miles ; and on cross-examination, the said witness stated that defendant had relations residing in and about Nottingham, and witness was satisfied, from statements of defendant and others, that defendant had visited said relations frequently since his removal in 1839, and that witness had seen him on several occasions with said relations.

And defendant likewise proved, by John R. Magruder, junior, one of the acceptors, that he is well acquainted with the defendant, being his relation ; and that John R. Magruder, senior, was at one time the commission agent of defendant ; that shortly after the 23d of July, 1846, (he is confident within a fortnight, and he believes that it was within a week, thereafter,) the plaintiff, Lambert, called at the counting-house of John R. Magruder & Son, the acceptors, and then and there inquired of the witness where the defendant's post-office was ; the said witness answered, he believed it was West River, but was not certain, as John R. Magruder & Son were not at that time the agents of the defendant, and that he would go out and inquire of Battee & Sons, the defendant's agents at that time ; that witness accordingly went out, and being informed by Battee & Sons that West River was defendant's post-office, he returned and communicated that fact to the plaintiff.

The drawer of the bill of exchange, upon which the present suit was brought, it was in proof, resided near Nottingham, Prince George's County, Maryland, and that the drawers and acceptors resided in the city of Baltimore, and the defendant at West River, Anne Arundel County, Maryland, and there was at this time a daily mail between Baltimore and Alexandria.

Upon the testimony above stated, the question occurred whether due diligence had been used by the plaintiffs, the holders of the bill, to give to the defendant, the indorser thereof, notice of the dishonor of said bill.

Upon which question the opinions of the judges being op-

posed, the point, upon the request of the plaintiffs' counsel, is hereby certified to the Supreme Court.

R. B. TANEY,
U. S. HEATH.

Upon this certificate, the cause came up to this court.

It was argued by *Mr. May*, for the plaintiffs, and *Mr. Meredith*, for the defendant.

*Mr. May* contended, that from the evidence it was apparent that the plaintiffs used due and reasonable diligence to transmit the notice to the supposed post-office of the defendant, and the following authorities will be relied on, viz. Harris *v.* Robinson, 4 Howard, 345 ; Story on Promissory Notes, § 316 ; Chitty on Bills, 453 ; 1 Barn. & Cress. 245.

Supposing, then, that the plaintiffs used due diligence when they sent the notice, it is immaterial whether it was received. Story on Promissory Notes, § 328.

Nor could the evidence in this record, that, some weeks after this notice was sent, the plaintiffs were informed of the proper office to which it ought to have been sent, have any influence on this question, because the right of action, once vested by reason of the transmisson of the notice after due diligence at that time, could not be divested by subsequent laches, nor do the cases require the transmission of a second notice when the first was sent after due diligence.

*Mr. Meredith*, for the defendant, contended, —

1st. That, upon the evidence, the plaintiffs did not use due diligence to discover the residence of the defendant, at the time the bill was protested, and before they sent notice of the protest addressed to the defendant at Nottingham, Maryland.

2d. That having, as was proved, ascertained within a week or a fortnight after the said bill fell due and was protested, that the defendant did not reside at Nottingham, but that he resided on West River, in Anne Arundel County, Maryland, and that West River post-office was the post-office at which the defendant received his letters, the plaintiffs ought then to have given notice to the defendant of the dishonor of said bill, by sending the same, addressed to him at West River post-office, or otherwise ; and there being no evidence that they gave such notice, the plaintiffs are not entitled to recover.

Upon the first point the following references were made : — Chitty on Bills (10th American from 9th London edition), 452, 453, 454, and notes ; Story on Promissory Notes, 370,

note 1; Beveridge v. Burgis, 3 Camp. 262; Barnwell v. Mitchell, 3 Conn. 101; Hill v. Varrell, 3 Greenl. 233; Story on Prom. Notes, 368; Hartford Bank v. Stedman, 3 Conn. 489; Bank of Utica v. Mott, 13 Johns. 432; Johnson v. Harth, 1 Bailey, (S. C.) 482; Chitty on Bills, 433, 488, 489, 490; Bayley on Bills, ch. 7, § 2, pp. 280 to 283 (5th edit. 1830); Planters' Bank v. Bradford, 4 Humph. 39.

Upon the second point, Chitty on Bills, same pages, and 451, 452, and note o; Baldwin v. Richardson, 1 Barn. & Cress. 245 (8 E. C. L. 66); Browning v. Kinnear, 1 Gow, 81 (5 E. C. L. 471); Bateman v. Joseph, 2 Camp. 461; Firth v. Thrush, 8 Barn. & Cress. 387 (15 E. C. L. 242); Williams v. Bank of U. States, 2 Peters, 96, 100; Galpin v. Hard, 3 McCord, 394; Preston v. Dayson, 7 Louis. Rep. 7; Sturges v. Derrick, Wightwicke's Exc. Rep. 76, 77.

Mr. Chief Justice TANEY delivered the opinion of the court.

The facts upon which the question certified has arisen are not disputed. The sufficiency of the notice is therefore a question of law. And it is of the first importance to the commercial community, that the rules which regulate the rights and liabilities of parties to negotiable instruments in courts of justice should be plain and certain, and conform to the established usages of trade.

Two objections have been taken to the sufficiency of the notice in this case. 1st. That due diligence was not used by the holder to ascertain the residence of the indorser before the notice was sent to Nottingham. And 2d. If reasonable diligence was used at that time, yet the information he afterwards received in Baltimore imposed on him the obligation of giving a further notice to the defendant himself, or of sending it by mail to his nearest and usual post-office.

As regards the first question, the court is of opinion that due diligence was used before the notice was sent to Nottingham. The case shows that there was very little, if any, trade between Alexandria and Nottingham at the time of this transaction, and but few persons, therefore, in Alexandria would be likely to know whether the defendant did or did not reside in Nottingham. The bill of exchange was not dated at any particular place, and the acceptors resided in Baltimore. The defendant was not engaged in trade, but was a physician residing in the country, and it does not appear that he was in the practice of visiting Alexandria, or of having any business transactions there. And the proof is, that Travers, of whom the holder inquired, from the nature of the trade in which he had been many years

47 *

engaged, — first to Nottingham and afterwards to Baltimore, — was as likely as any other person in Alexandria to give the information which the plaintiffs were seeking to obtain, if not more so. The answer he received was direct and positive, both as to the knowledge of Travers and the residence of the indorser, and he had a right to rely upon it. And although Travers was mistaken, and the notice was not sent to the nearest or usual post-office of the defendant, yét the plaintiffs used all the diligence which the law requires, and had sufficient reason to believe that the notice would be received. The liability of the indorser was therefore fixed. The case of Harris v. Robinson, 4 Howard, 345, is conclusive on this point.

The second objection taken in the argument has not been so directly settled by judicial decision on the point, but is, we think, equally clear upon established principles.

We have already said, that the liability of the indorser was fixed by the notice sent to Nottingham. The plaintiffs had acquired a right of action against him by this notice, and might have brought their suit the next day. Could that right be divested by the information which was subsequently given to them? We think not, and that all of the cases in relation to this subject imply the contrary. The books are full of cases where mistakes of this kind have been committed, and suits afterwards brought when the residence of the party was discovered. Yet it does not seem to have been supposed in any of them that a second notice was necessary, nor are we aware that such a point has ever been raised. Yet if a notice thus given, after diligent inquiry, is not equivalent to actual notice, knowledge subsequently obtained would be a defence to the action, even if the holder had brought suit before he learned what was the nearest or usual post-office of the defendant.

The case of Firth v. Thrush, 8 Barn. & Cress. 387, which was much relied on in the argument, depended upon different principles. In that case, the holder knew that notice had not been given to the indorser. He had been engaged in making inquiries for his residence, without being able to obtain any information upon which he might have acted. And the question there was not whether a second notice should be given, but whether due diligence was used in sending the first.

The rule contended for by the defendant would produce much uncertainty and difficulty in transactions of this kind. For if a second notice must be given, is it to be required in all cases where there has been an error in the information as to the defendant's post-office? Certainly the practice of the courts has been otherwise. And if it is not to be required in all cases,

it would be impossible to fix any certain limits as to time or circumstances. The subsequent information might come to him casually, when his mind was occupied with other engagements; he might not confide in it as much as in that which he had before received; it might come to him in a few days, or months might elapse before he obtained it. The rule would be loose and uncertain in its application, and constantly lead to litigation, where the residence of the indorser was unknown, or an error committed as to his usual post-office. It would also be contrary, the court think, to the usages of commerce, and to the uniform practice in courts of justice. In the case of Harris v. Robinson, before referred to, no second notice was given; nor did the court intimate that any was necessary.

The law does not require actual notice. It requires reasonable diligence only, and reasonable efforts, made in good faith, to give it. And if sufficient inquiries have been made, and information received upon which the holder has a right to rely; a mistake as to the nearest post-office or usual post-office does not deprive him of his remedy. He has done all that the law requires; and the notice thus sent fixes the liability of the indorser as effectually as if he had actually received it. This we think is the true rule, and the only one that can give certainty and security in transactions in commercial paper.

We shall therefore certify, that reasonable diligence was used by the plaintiffs to give the defendant notice of the dishonor of the bill.

### Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Maryland, and on the point or question on which the judges of the said Circuit Court were opposed in opinion, and which was certified to this court for its opinion, agreeably to the act of Congress in such case made and provided, and was argued by counsel. On consideration whereof, it is the opinion of this court, that, upon the facts in this case, due diligence had been used by the plaintiffs, the holders of the bill, to give to the defendant, the indorser thereof, notice of the dishonor of said bill. Whereupon, it is now here ordered and adjudged by this court, that it be so certified to the said Circuit Court.