(Decided March 15th 1865.)

---

THOMAS WHITRIDGE AND HORATIO L. WHITRIDGE *vs.* ED-
WARD RIDER.

PROMISSORY NOTES: NOTICE: DILIGENCE.—If the holder of a promissory note does not know the residence of the endorser, or other party to whom notice of non-payment is to be given, but can inform himself by reasonable endeavors or diligent inquiry, he must do so: an endorser is entitled to strict notice, by which is meant,—"that reasonable diligence shall be employed, and reasonable efforts made to give it."

Whitridge *vs.* Rider.

The diligence employed should be such as business men usually exercise, when their interest depends upon obtaining correct information. The holder must act in good faith, and not give credit to doubtful intelligence, when better could have been obtained.

The holder, or notary having charge of the bill or note, is required to resort to all proper sources of information within his reach, in order to obtain the knowledge of the post office of the person to be notified; and having done so, he will be excused if he acts upon incorrect information thus obtained.

A notary having ascertained from proper persons, that the residence of an endorser was in Baltimore County, but failing to obtain from them information of his actual or nearest post office, neglected to apply to the makers of the note, although he knew them, and that their place of business was but one square from his office, on the ground of their presumed interest not to give him correct information; and subsequently directed his notice to the endorser, at Baltimore City, and placed it in the post office there. HELD:

That the Court does not recognize in the makers of the note, such an interest as would lead them to mis-state; and that the notary in neglecting to apply to them for the information sought, failed in his duty: That if in applying to them he had failed to obtain from them the desired information, it would have been his duty to have directed the notice to the county seat of the county in which he had discovered the endorser resided.

EVIDENCE,—ADMISSIBILITY OF.—W. & W. endorsees, sued E. R., endorser of a promissory note of W. T. F. & Co., at twelve months, dated February 6th 1861, which was protested for non-payment on the 8th of February 1862. The members of the firm of W. T. F. & Co., with C. F. T. composed a prior firm of T. F. & Co., which was dissolved in January 1861. The plaintiffs were the creditors of T. F. & Co., on promissory notes to the amount of $3,000, which were settled and released at said dissolution. The plaintiffs failing in showing notice to bind the endorser, offered in evidence generally, a bill of sale from the members of the firm of T. F. & Co. to E. R., dated October the 3rd 1861, of their entire stock in trade, &c., for the consideration of $12,500, also a bill of sale from W. T. F. alone to E. R., of furniture, &c., dated January the 9th 1862,—the consideration recited being: that "the said W. T. F. is indebted to E. R. in the sum of $4,262.67, for promissory notes endorsed by said E. R. in favor of W. T. F., which said notes the said E. R. is liable for and has assumed to pay." HELD:

That said bills of sale were not admissible in evidence, as offered, generally, inasmuch as they did not refer to the note in suit, or show any connection with it, and there was nothing contained in the instruments themselves, from which the jury could conclude that it was embraced in the consideration mentioned in either of them.

The plaintiffs renewed the offers of each of said bills of sale, with the further offer to follow up each with parol evidence.—as to the first, as to what was the interest of the witness, C. F. T., in the property included in that deed,

and of the true consideration upon which it was based; and as to the second, for the purpose of asking the witness, W. T. F., the true consideration of the same, and whether the endorsements mentioned and secured in said deed, were endorsements for the benefit and accommodation of said W. T. F., and embraced the endorsement sued on. HELD:

1st. As to the first deed; that proof of a consideration, different from the money consideration expressed in the deed, without specifying what connection the note in suit had with it, was not of such a nature as to inform the Court of its relevancy, and was therefore inadmissible.

2nd. That the offer, as to the second deed, was sufficiently specific, and should have been allowed; and the exclusion of the evidence thus offered, on the ground that it should have been offered as original evidence for the plaintiff, and not in reply to the defence set up, was error.

3rd. Where a plaintiff has made out a *prima facie* case, and his proof has been met and controverted by the defendant, he is not to be debarred from adducing evidence in reply, which may have been inconsistent with the case as at first presented.

4th. A PLEA OF WAIVER OF NOTICE was not necessary to the introduction, as testimony of the second deed, and the accompanying parol evidence.

APPEAL from the Circuit Court for Baltimore County.

*Assumpsit* by the appellants against the appellee for the sum of $527.71, upon a promissory note drawn by W. T. Foster & Co., and endorsed by the appellee, dated the 6th of February 1861, and payable twelve months after date with interest. Plea *non assumpsit*, upon which issue was joined. The facts of the case are fully stated in the opinion of this Court. Upon the close of the testimony, the plaintiffs offered the following prayer:

The plaintiffs pray the Court to instruct the jury, if they find that the promissory note given in evidence was signed by the commercial firm of W. T. Foster & Company, and endorsed by the defendant in his proper hand-writing and was protested by the witness Sutton, as appears by the protest given in evidence, and if the jury also find that the notice mentioned in the said protest, as having been directed to the defendant at Baltimore, was placed in the Baltimore City post office on the day of the maturity of said draft, and if the jury shall find that the said Sutton,

on said day of maturity, made inquiries of the plaintiffs, and of the officers of the Franklin Bank and otherwise, as stated by said Sutton in regard to the residence and post office, and that he could not ascertain the post office of the defendant, although he was informed by the cashier, Buck, that the defendant resided in Baltimore County, and if the jury also find that the defendant kept his bank account with the Franklin Bank, and was frequently in the City of Baltimore, and that his residence is about seven and a quarter miles from said city, near the Northern Central Railway, and upon this railway two daily trains run regularly from a stopping place near the defendant's residence to the City of Baltimore. And if the jury also find the plaintiffs were the holders of said promissory note at its maturity, and were then ignorant of the defendant's residence and post office, then the plaintiffs have given sufficient evidence to charge the defendant as endorser on said promissory notes.

The defendant also offered the following prayer:

The counsel for the defendant prays the Court to instruct the jury that there is no sufficient evidence to establish such notice to the defendant of the dishonor of the note sued for in this case, as to enable the plaintiffs to recover in this action. The Court, (GRAYSON, Special Judge,) rejected the plaintiffs' prayer and granted that of the defendant, and upon this granting of the one and rejection of the other, the plaintiffs base their fifth exception. The verdict and judgment were for the defendant, and the plaintiffs appealed.

The cause was argued before BARTOL, GOLDSBOROUGH, COCHRAN, and WEISEL, J.

*George Wm. Brown* and *F. W. Brune* for the appellants.

I. The appellants contend, under their first and second exceptions, that the bill of sale and other evidence offered

under said exceptions were admissible: 1st. For the purpose of enabling the witness, Taylor, to explain how his execution of the bill of sale was part of a previous arrangement, and was consistent with his previous statement, that upon the dissolution of this firm, all business connections with his former partners had entirely ceased. 2nd. For the purpose of proving the true consideration of said bill of sale, and that it was a part of such arrangement to indemnify and secure the appellee for the endorsement of the note sued, and other endorsements for the new firm, in discharge of liabilities of the old firm, including those to the appellants, and if so, was legal evidence to show a waiver by the appellee of notice of non-payment of the note sued on.

The questions presented on the evidence objected to in these and the two following exceptions, are not in regard to the construction of the bill of sale and deed mentioned in said exceptions, arising between the parties to the instruments, the determination of which will affect or change their rights or obligations, as they stand upon these instruments, but these instruments were collaterally adduced to show an arrangement by which the appellee, as endorser of the note sued on, was secured by the makers, and had assumed to pay the same, and was thus not entitled to notice, and the deeds themselves and the parol evidence offered in relation to them, as well as the facts and circumstances proved, were admissible to show the true design of these deeds, and that they were part of this arrangement.

II. The appellants contend, that the endorsement sued on may be brought within the ambiguous terms of said deed, but if not, that they are entitled to show, as they proposed to do by the grantor in said deed, who was also one of the makers of the note sued on, that the appellee had, in consideration of said deed to him, assumed to pay the endorsement sued on, with other endorsements, in exemption of the liability of the grantor as a party to said

notes, and such proof would amount to a clear waiver on the part of the appellee to notice of non-payment of the note sued on, on the part of its holder, but would not in any manner affect or impair the rights of the appellee, under said deed, as against the grantor therein.

III. The appellants contend that in rejecting the appellants' prayer and granting that of the appellee, the Court below erred, because even if this Court should be of opinion, that the facts in the record do not show an excuse for or waiver of notice, still they show such *diligence* on the part of the notary to give the notice required, as is equivalent to notice, and sufficient to entitle the appellants to recover on the endorsement sued on without *actual* notice.

The law does not require actual notice, but only the exercise of due diligence on the part of those charged with the duty of giving the notice.

The circumstances of this case are somewhat peculiar; the appellee was proved to live on the line of the Northern Central Rail Road in Baltimore County, within twenty minutes journey of the City of Baltimore; upon this road two trains a day passed his house, going to the city and coming from it. He kept his bank account in the city, to which he frequently was obliged to go in transacting a large business. The officers of the bank where he kept his account, could not tell his post office. The crier of the Court, who speaks of him as a person as well known as any in the County, was ignorant of it. His post office, Towsontown, was two miles from his residence, while two post offices on the rail road, which passed through his farm, were much nearer. No one states the nearest post office. Under these circumstances, and after the inquiries made by the notary, the appellants contend that he was justified in directing the notice to the defendant in Baltimore, and placing it in the post office there, and in thus acting, exercised due diligence.

Whitridge *vs.* Rider.

To show that the evidence offered in the first four exceptions and rejected, was legal evidence to be submitted to the jury from which they might find a waiver of notice on the part of the appellee, or an excuse for the want of it, the appellants refer to the following authorities: *Rogers vs. Stephens*, 2 *Term R.*, 718, 719. *Gibbon vs. Coggon*, 2 *Camp.*, 188. *Patterson vs. Beecher, C. J. B. Moore*, 319, (17 *E. C. L.*, 44–5.) *Brownell vs. Bonney*, 1 *Q. B.*, 39, (41 *E. C. L.*, 427.) *Campbell vs. Webster*, 2 *C. B.*, 261–8, (52 *E. C. L.*, 261.) *Thornton vs. Wynn*, 12 *Wh.*, 188. *Hyde vs. Stone*, 20 *Howard*, 175. *Walters vs. Munroe*, 17 *Md. Rep.*, 157. *Selden vs. Washington*, 17 *Md. Rep.*, 385–6. *Long vs. Crawford*, 18 *Md. Rep.*, 220–225. *Leffingwell vs. White*, 1 *Johns. Cases*, 99. *Chitty on Bills*, sec. 316.

To show that the evidence offered in relation to the consideration and design of the deed and bill of sale given in evidence was admissible, they refer to *Alderson vs. Ames*, 6 *Md. Rep.*, 57. *Creamer vs. Stephenson*, 15 *Md. Rep.*, 211. *Parks vs. Parks*, 19 *Md. Rep.*, 330. *Davis vs. Calvert*, 5 *G. & J.*, 269. *Plank R. Co. vs. Bruce*, 6 *Md. Rep.*, 464. *Lewis vs. Kramer*, 3 *Md. Rep.*, 290–291. *Pegg vs. Warford*, 7 *Md. Rep.*, 607. *Duvall vs. Farmers Bk of Md.*, 9 *G. & J.*, 47. *Long & Byrn vs. Crawford*, 18 *Md. Rep.*, 220. *Edgerly vs. Emerson*, 3 *Fost.*, 555. *Reynolds vs. Magness*, 2 *Iredell*, 26. *Krider vs. Lafferty*, 1 *Wharton*, 303.

Upon the question of diligence, under the 5th exception, they refer to *Lambert vs. Ghiselin*, 9 *Howard*, 552–559. *Carroll vs. Upton*, 2 *Sandf'd Sup. Ct. R.*, 171. *Rawdon vs. Redfield, Ib*, 178. *Sasscer vs. Whitely*, 10 *Md. Rep.*, 98. *Moore vs. Hardcastle*, 11 *Md. Rep.*, 488.

*W. Pinkney Whyte* and *R. J. Gittings*, for the appellee.

As to the first exception, the appellee contends that the bill of sale offered in evidence was inadmissible, because it had no relevancy to the subject matter of the

suit. It was executed by a firm, entirely different from Wm. T. Foster & Co., the drawers of the note in suit. It conveyed property manifestly belonging to the firm of Taylor, Foster & Co. The plaintiffs had proved by the witness, C. F. Taylor, one of the grantors in the bill of sale, that he had nothing to do with the affairs of W. T. Foster & Co., and that all debts due to the plaintiffs by Taylor, Foster & Co., had been settled and released when that firm was dissolved.

The second exception is no more tenable than the first, for if the bill of sale was not admissible, no proof to explain it or to show that the consideration for it was other than that stated in the paper itself, could be introduced. *Dodge vs. Tozer*, 13 *Jur.*, 959

As to the third exception, it is clear that the bill of sale of the private furniture of one of the firm of W. T. Foster & Co., ought not to have been admitted, for it contained no reference whatever to the note in suit, but referred exclusively to notes drawn by Wm. T. Foster individually, to the extent of $4,264.67. *Whiteford vs. Munroe*, 17 *Md. Rep.*, 149.

As to the fourth exception, if the deed aforesaid was inadmissible, bearing on its face no reference to the note in question, but repudiating such a theory, it was not competent by parol proof to extend the security or change the consideration mentioned in said bill of sale. Neither of these deeds or bills of sale profess to convey all the property of the grantors. *Duvall vs. The Farmers Bank of Md.*, 9 *G. & J.*, 43, 47. *Walters vs. Munroe*, 17 *Md. Rep.*, 157, 158. *Kramer vs. Sandford*, 4 *Watts & Sergeant*, 328. *Spencer vs. Harvey*, 17 *Wend.*, 489. *Abbott vs. Wiley*, 17 *Pick.*, 332.

The appellee further contends that the Court did not err in rejecting the plaintiff's prayer: 1st. Because there was no proof, that the witness, Sutton, made inquiries, except of the plaintiff, and the officers of the Franklin

Bank, and therefore the submission to the jury to find that he made inquiries "otherwise" was not supported by any proof whatever: 2nd. Because the information that he obtained, that Rider resided in Baltimore county ought to have been acted upon by him, and was not, for he treated him as a resident of Baltimore city. The presumption that Baltimore city was Rider's residence was rebutted by the direct information given by the officers of the Franklin Bank, who were the agents of the plaintiffs, and the notary being so advised ought to have made diligent inquiry as to his post office, which he did not, or he should have sent notice to the county seat. *Harris vs. Robinson,* 4 *Howard,* 351. *Story on Bills, sec.* 299, (note.) *Story on Promissory Notes, sec.* 316, (notes.) *Byles on Bills,* 234, 337. *Nailor vs. Bowie,* 3 *Md. Rep.,* 256. *Whiteford vs. Burckmeyer,* 1 *Gill,* 142.

Under both prayers the inquiry is, whether the notice deposited in the Baltimore post office, was sufficient to render Rider liable on the note in suit; the notary having exercised due diligence. We contend he did not. As soon as the notary discovered, that the endorser lived in Baltimore county, he ought to have sent notice to the nearest post office, or at least to a post office in Baltimore county. *Walters & Harvey vs. Brown,* 15 *Md. Rep.,* 293. *Moore vs. Hardcastle,* 11 *Md. Rep.,* 486. *Flack vs. Green,* 3 *G. & J.,* 474. *Bell vs. Hagerstown Bank,* 7 *Gill,* 223. *Bank of Columbia vs. Magruder,* 6 *H. & J.,* 172. *Barry vs. Crowley,* 4 *Gill,* 194.

WEISEL, J., delivered the opinion of this Court.

The appellants, plaintiffs below, declared against the defendant, the appellee, as the endorser of a promissory note drawn by William T. Foster & Co., in favor of the defendant or order, and by him endorsed to the plaintiffs, charging that the same had been duly presented for payment and was dishonored, of which the defendant had

due notice. The declaration also contained the common money counts. The defendant pleaded that he was not indebted, and that he did not promise as alleged, and issues were joined.

At the trial, four exceptions to testimony offered by the plaintiffs and excluded by the Court, were taken, which will be noticed hereafter. When the testimony was closed, the plaintiffs and the defendant, by their respective counsel, submitted to the Court the prayers in the record, which present the question as to the sufficiency of the notice of dishonor of the note, the refusal of that of the former, and the granting of that of the latter by the Court, formed the plaintiffs' fifth exception. The verdict and the judgment being for the defendant, the plaintiffs appealed   We will first consider the question raised by the prayers: "was due notice of the dishonor of the note given to the defendant below?"

The defendant resided in Baltimore County. Of this the notary who had charge of and protested the note for non-payment, was distinctly informed, but he failed to ascertain what was his nearest, or what was his known post office. In this dilemma he, on the same day, "dropped a notice (as he states) in the Baltimore city post office, under cover, directed to Edward Rider, Esquire, Baltimore, Maryland."

In his endeavor to ascertain the residence and post office of the defendant, the notary had recourse to the plaintiffs and to the officers of the Franklin Bank, Baltimore, which bank held the note for collection for the plaintiffs. From these he learned that the defendant resided in Baltimore County, but none of them could inform him of his, or his nearest post office in that County. He was also told at the bank that the defendant kept a bank account in that bank, and had business in the city which brought him frequently there. He made no inquiries of the makers of the note, whom and whose place of

business in Baltimore city, but one square from his own office, he knew; and his reason for not doing so, was, that as they had not paid the note, they would have no interest in telling him where to find the endorser; and that such was his practice in other cases, he having been a notary for four years, and that in that time he had protested four or five thousand notes and bills. The only persons he sought information from, were the plaintiffs and the cashier, and (through him) the clerks of the Franklin Bank.

It was admitted (by agreement) that upon the Northern Central Railway two daily trains passed regularly from a stopping place near the defendant's residence to the city of Baltimore; and it was further proved that he had resided for forty years, about "seven and one-fourth miles from Baltimore city, and two from Towsontown, which latter place was his regular post office for six months before, and where he had a box; and that there were two post offices nearer to his residence than that of Towsontown, that of Brooklandville being the nearest." That "under these circumstances the notary thought a notice directed to the defendant at Baltimore, and placed in the post office there, was the best course to pursue to reach him; that he supposed Baltimore city post office was the most convenient place for many persons living in the county, to get their letters."

What constitutes due diligence upon any state of facts, agreed or to be found by the jury, is a question of law for the Court, and it is very difficult to lay down any general rule applicable to all cases. Each case depends much on its own special circumstances. This however can be stated, generally, that if the holder does not know where the endorser, or other party to be notified, lives, but can inform himself by reasonable endeavors or diligent inquiry, he must do so. An endorser is entitled to strict notice, by which is meant "that reasonable dili-

gence shall be employed, and reasonable efforts made to give it. 1 *Parsons on Bills and Notes*, 490, and note *a*. *Moore vs. Hardcastle*, 11 *Md. Rep.*, 486. *Rawdon vs. Redfield*, 2 *Sanf. Sup. C. R.*, 178. The diligence employed should be such as men of business usually exercise when their interest depends upon obtaining correct information. The holder must act in good faith, and not give credit to doubtful intelligence when better could have been obtained. BRONSON, J. *Bank of Utica vs. Bender*, 21 *Wend.*, 646. *Lambert vs. Ghiselin*, 9 *How.*, 557, 558. *Sasscer vs. Whitely*, 10 *Md. Rep.*, 104.

Where or of whom should the holder seek this information?

In the case of the *Bank of Columbia vs. Fitzhugh*, 1 *H. & G.*, 248, the notary made inquiry at the court house, post office, and exchange, and this was held sufficient. In a case in 3 *Hill*, 520, *Spencer vs. Bank of Salina*, the notary inquired of several persons in the bar room of a hotel; at the post office, or of individuals he met in the street, he did not know which; nor did he know the persons whom he asked; and this was held insufficient, for the reasons that it did not appear that the persons he inquired of were the business men of the place, or that they were credible, and were likely to know the fact. Where there is a Directory, that should be consulted; but not exclusively relied on, if other proper sources of information are accessible. Persons connected with the transaction and likely to know the residence of the endorser and not interested to mislead, should be inquired of. All the parties to a note or bill should be applied to if practicable, except any or such as from interest would make a false statement. Information acquired in this way, fairly, and acted upon, is regarded a sufficient performance of the duty of diligence; and the notice would suffice, though the wrong post office should be indicated and used. In *Waters & Harvey vs. Brown*, 15 *Md. Rep.*, 285,

all the parties resided in Baltimore city, and the notary inquired of the plaintiff and the maker of the note, for the endorser's residence; and this was held sufficient.   In *Rawdon vs. Redfield,* 2 *Sandf.,* 178, the notary examined the Directory and asked the acceptor and the holder of the bill, the Court said there was no interest in either to mislead, and it was sufficient.  Cases are numerous where applications were made to the maker of a note, or his agent, to the drawer of a bill, to the second endorser as against the first, and the inquiries were regarded as sufficient to authorize the holder in giving the notice he did, though the correct residence was not obtained.   In the case of *Moore vs. Hardcastle,* 11 *Md. Rep.,* 486, the notary knew that the endorser resided in Caroline County, but he made *no inquiries whatever for his post office,* but directed the notice to the county town; and the Court held this insufficient.   From these cases it would seem that the holder, or the notary having charge of the bill or note, is required to resort to all proper sources of information within his reach, in order to obtain the knowledge of the post office of the person to be notified; and having done so, he will be excused if he acts upon incorrect information thus obtained.

In the case under review the notary ascertained that the defendant, (endorser) resided in Baltimore County. The persons from whom he obtained this information were proper persons to be applied to, but they could not inform him of his post office, or of the one nearest to him. He failed however to apply to the makers of the note, although he proves that he knew them and that their place of business was but one square from his office.   The reason he assigns for not doing so, was their presumed interest not to give him correct information.   We think that in this he failed in his duty.   We cannot recognize in the makers of a note such an interest as would lead them to misstate; and as they, or some of them, were

within reach of inquiry, the notary should have made application to them; and failing to obtain from them, after the other inquiries he had made, the information he sought, we think it was his duty to direct the notice to the county seat of the county in which he discovered he resided. For this there is authority, and we consider the rule a good one and applicable in such cases. *Weakley vs. Bell & Sterling*, 9 *Watts*, 273. *Harris vs. Robinson*, 4 *How.*, 336.

The ruling of the Court below upon this branch of the inquiry, as presented by the prayers, and forming the plaintiffs' fifth exception, we therefore pronounce correct.

The next question arises on the exceptions to certain evidence offered by the plaintiffs as rebutting testimony, and relied upon as constituting an excuse, by way of waiver, for not giving notice to the defendant of the dishonor of the note.

The maker of the note sued upon was the commercial firm of William T. Foster & Co. The note was dated February 6th 1861, payable twelve months thereafter, and it matured and was protested for non-payment on the 8th of February 1862. The payee was Edward Rider, the defendant and endorser. The plaintiffs are Rider's immediate endorsees. The firm of Wm. T. Foster & Co., the makers of the note, was composed of Wm. T. Foster and John Beatty. These, with a certain Charles F. Taylor, composed a prior firm under the name of Taylor, Foster & Co., which dissolved partnership about the middle of January 1861, *before* the making of the note.

The plaintiffs were creditors of Taylor, Foster & Co., on promissory notes to amount of $3,000, which were settled and released when that firm was dissolved.

All this was proved on the part of the plaintiffs by the said Charles F. Taylor, and a statement of these dates, facts and relations of the parties, is deemed necessary to

71    v. 22.

a proper understanding of the nature and purpose of the offers to be examined under the other exceptions.

The plaintiffs offered in evidence two bills of sale, *generally;* one from Charles F. Taylor, John Beatty and Wm. T. Foster to Wm. W. Taylor and Edward Rider, dated 3rd October 1861, for an entire stock in trade of goods, wares and merchandise, counting room furniture and fixtures, in a certain store room in Baltimore, being the contents of a wholesale tobacco and grocery store, and for the consideration of $12,500 paid. This was an absolute bill of sale, without any recitals. The other was executed by Wm. T. Foster to Edward Rider, dated January 9th 1862, for certain furniture in his dwelling, in Baltimore, and for a consideration thus expressed in the deed: "Whereas, the said Wm. T. Foster is indebted to Edward Rider in the sum of four thousand two hundred and sixty-two dollars and sixty-seven cents, for promissory notes endorsed by said Rider in favor of said Wm. T. Foster, which said notes the said Edward Rider is liable for and has assumed to pay; and whereas the said Rider has agreed to purchase for said indebtedness the personal property hereinafter mentioned, wherefore, &c., and in consideration of the premises and of the sum of five dollars paid," &c.

It will be observed that Wm. T. Foster, (who was a member of both firms, one of which was the maker of the note,) was a party grantor to both instruments of writing, and that Rider, the defendant, was a grantee in both,—the only parties to the latter being the said Foster and Rider; and that both instruments bore date and were executed *prior* to the maturity of the note sued on.

We think the general offers of these bills of sale were correctly rejected by the Court below, as they do not on their face or by their terms refer to the note in suit, or show any connection with it; and that the jury could not, from the instruments themselves, conclude that it was

embraced in the consideration mentioned in either. We therefore sustain the Court in its refusal to allow said bills of sale to be put in evidence *generally,* before the jury. They were, as thus presented, irrelevant. This formed the subjects of the first and third bills of exception.

The plaintiffs renewed the offer of each bill of sale, with the further offer to follow each up with parol evidence, as to the first, of what was the witness, Taylor's interest in the property conveyed by that deed, and to state the true consideration upon which it was based; and as to the second, for the purpose of asking of the witness, Wm. T. Foster, the true consideration of the same, and whether the endorsements mentioned and secured in said deed were endorsements for the benefit and accommodation of said Foster, and embraced the endorsement sued on.

There can be no question that if Rider, before the maturity of the note sued on, bought property from the makers of the note, or either of them composing the firm, and paid for the same by his liability for the note sued on, that such a transaction would constitute a waiver of demand and notice.

Was the Court then correct in excluding the deeds, or either of them, with the parol testimony thus offered? This question arises on the second and fourth exceptions.

If the fact were, as contended for by the plaintiffs, that this note formed a part of the consideration of said deeds, or either of them, could the plaintiffs show it in this action, and in the manner proposed, so as to excuse them from giving the notice; or must such instruments clearly and distinctly describe on their face and include in their terms, how the consideration was composed, if ever intended to be used as evidence of a waiver or for a like purpose?

Proof offered in one form when its applicability cannot be perceived, should very properly be rejected; and yet,

when coupled with other testimony, showing its relevancy, should be allowed.

The offer of the deeds with the parol proof, was not for the purpose of showing as between the parties to the deeds a contradiction or variance of, or addition to the terms of the written instruments, or to apply to them a mode of construction not authorized by the well settled rule of evidence; or to explain a patent ambiguity.   It is very clear that if either of the deeds had distinctly . expressed on its face that it was given by way of payment and satisfaction of this identical note, such deed itself ·would have been evidence.   Is it to be excluded then because the consideration is not so expressed, and yet its general language may, embrace it, and it can be shown   - in connection that it was in fact embraced?   If so, third parties interested would be greatly prejudiced by the ignorance, carelessness or design of others.   The rule is said not to be infringed when parol testimony is invoked to point out and apply the articles or subject matter of a conveyance.   This is an every day practice.   So where a contract is verbal and entire, and part only reduced to writing, the whole may be given in evidence by the party for whose benefit it is offered.   1 *Green. Ev.*, sec. 284, a. Where a written guaranty was expressed to be in consideration of *having discounted* a certain note, explanatory parol evidence was admitted to show that the discount was *cotemporaneous* with the guaranty.   *Same & Haigh vs. Brooks*, 10 *Ad. & Ell.*, 309 and 323; *Butcher vs. Stuart*, 11 *M. & W.*, 857.   And evidence may be given of a consideration not mentioned in a deed, if not inconsistent with that expressed in it.   1 *Green. Ev.*, sec. 285. So if a written contract extends the time of paying *certain notes*, parol evidence may be resorted to to show what notes were so held and intended.   1 *Greenlf. Ev.*, sec. 287.

These are a few instances in which the rule has been held not to apply, and they exemplify our view of the present case.

The second exception was to the offer of the deed first named, with the further proof by Mr. Taylor (the witness who proved its execution) "what was his interest in the property conveyed by that deed, and to state the true consideration upon which it was based." This offer, we think, was too general in its terms to enable the Court to see the applicability of the testimony offered. The offer of proof of a consideration different from the money consideration expressed in the deed, without specifying what connection the note in suit had with it, was not of such a nature as to inform the Court of its relevancy, and we therefore think it was properly objected to, and the objection correctly sustained by the Court. But the same objection does not apply to the offer in the fourth exception. That was sufficiently specific, and we think should have been allowed by the Court, and the plaintiffs permitted to show what their offer purported. We therefore reverse the Court below on this fourth exception.

But it was objected in the appellee's brief, and also in the argument, that the deed offered under this exception repudiated this note in express terms, or recited notes of a class to which this note could not belong without a plain contradiction of the language employed to describe them; that the note sued on was given by *William T. Foster & Co.*, and was not matured when the deed was given; whereas the deed recites that *William T. Foster* was indebted to Rider in a certain sum for promissory notes endorsed by Rider in favor of said William T. Foster, which said notes the said Rider was liable for and had assumed to pay.

The note sued on was endorsed by Rider, and he was therefore liable on it, though that liability was not fixed. William T. Foster was a member of the firm of William T. Foster & Co., the maker of the note, and it was competent for him individually to secure Rider against the liability, or make it the consideration of a sale to him;

and if this were done *prior* to the maturity of the note, notice to Rider of its non-payment was not necessary to bind him. *Walters & Co. vs. Munroe,* 17 *Md. Rep.,* 157. The statement in the recital of the bill of sale, that Rider had endorsed promissory notes in favor of William T. Foster, we do not understand as asserting that he, Foster, was the payee of said notes, but that he endorsed them in his favor and for his benefit. These endorsements may have been made at the instance or for the benefit of said Foster, and he may have so described them in the bill of sale, although the partnership name, of which he was a member, was signed to the notes; or, they may have been endorsed at his instance for the benefit of the firm, and he considered it his duty to secure and indemnify the endorser. Such or any other or similar state of facts may have existed, in harmony with the consideration and recital set out in the bill of sale, and so may have been explained; and if so, we think should have been allowed to be explained by the proof which the interrogatories offered to be propounded to the witness, were calculated to elicit.

The testimony thus offered, we think, was properly rebutting testimony, and if the. Court below excluded it on the ground that it should have been offered as original evidence for the plaintiffs and not in reply to the defence set up, such exclusion was error. Sometimes where a plaintiff has made out a *prima facie* case, and his proof has been met and controverted by the defendant, he is not to be debarred from adducing evidence in reply, which may be inconsistent with the case as at first presented. 2 *Phil. on Ev.,* 914 and 915. This is one of that class of cases; and when the evidence offered was admissible for the purpose for which it was tendered, it should not have been excluded on the ground that it was not rebutting testimony.

Neither do we think that a plea of waiver of notice was necessary to the introduction of this testimony; but that under the pleadings and issues in this cause it was admissible. *Whiteford vs. Buckmeyer & Adams*, 1 *Gill*, 128. *Beck vs. Thompson & Morris*, 4 *H. & J.*, 531.

We reverse the judgment and award a *procedendo*.

*Judgment reversed,*
*and procedendo ordered.*

(Decided March 15th 1865.)