HENRY REIER *vs.* MOSES STRAUSS, and others, trading as STRAUSS BROS.

*Notarial certificate of Protest of a Promissory note—The words therein " after diligent search and inquiry to ascertain his whereabouts," inadmissible as Proof of such diligent search, &c.—Due diligence to give notice—Presumptive evidence of residence—Prayer defective as being too general.*

The words " after diligent search and inquiry to ascertain his whereabouts," contained in a notarial certificate of protest of a promissory note, are not admissible as evidence of such " diligent search and inquiry " having been made.

Such clause in the protest refers to matters collateral and independent of the presentation and refusal of payment, and is a conclusion of law which the Notary could not legally draw or establish by his own testimony.

But if it were unnecessary for the Notary to make any search or inquiry for the residence of the indorser, the admission of said clause as evidence will be no ground for a reversal.

The law does not require actual notice, to the indorser, of the demand of payment and refusal by the maker, but due diligence to give notice.

In an action against the indorser of a promissory note, it appeared that he was a resident of the City of Baltimore, (the place of the execution and date of the note,) at the time of its execution and date, and continued to reside there some time afterwards, and retained his sign at his place of business, and his name in the City Directory. HELD:

That in the absence of proof of knowledge to the contrary on the part of the holders, he might reasonably have been presumed by the Notary to be still a resident of the city, and treated as such in giving him notice.

Though a prayer may have been intended as a demurrer to the evidence upon the issue joined on one of the pleas, it should not be granted if it contains no special reference to the failure of evidence

Reier vs. Strauss, et al.

on that or the other issues, and is a general denial of the plaintiff's right to recover, without pointing out any particular error, or omission in the proof, or raising any definite question as to its sufficiency.

APPEAL from the Circuit Court for Baltimore County.

The appellees brought this action against the appellant as the indorser of a promissory note held by them. The defendant pleaded " never indebted " and " did not promise as alleged," and for a third plea, " that he has not had and received due legal notice of the demand and non-payment of the promissory note mentioned in the declaration of the said plaintiffs." Upon these pleas issue was joined. The cause was tried below before the Court, (GRASON and YELLOTT, J.,) without the intervention of a jury. The verdict and judgment being in favor of the plaintiffs, the defendant appealed. The case is further stated in the opinion of the Court.

The cause was argued before BARTOL C. J., BOWIE, BRENT, MILLER and ALVEY, J.

*John T. McGlone,* for the appellant.

The Court erred in admitting in evidence the certificate of the Notary Public, that he made " *diligent search and inquiry in trying to ascertain the whereabouts* " of the appellant.

The notarial certificate is evidence only of such facts as the statute designates. And Courts are strict in confining such certificate to the precise facts required by the statute, *and no more. Proffatt on Notaries, sec.* 140.

By the Maryland statute it is made evidence only of the manner in which the notice was sent or delivered to the endorser. *Rev. Code, p.* 296, *sec.* 7; *Whiteford vs. Burkmyer,* 1 *Gill,* 149.

The manner of transmission or delivery cannot be construed to involve a search for an endorser; the official

Reier *vs.* Strauss, *et al.*

character of the Notary extending, in the language in 4 *Wharton*, 113, " only to the protest, and not to the hunting up of the parties."

The certificate of the Notary is not evidence of any fact " which could not be established by his testimony if produced as a witness." *Weems vs. Farmers Bank of Md.,* 15 *Md.,* 239 ; *Young vs. Bennett,* 18 *Penn. State,* 261.

It is hardly a subject for discussion that the Notary would not have been permitted to testify, as he had certified, to a conclusion of law. The question of a diligent search and enquiry was the very question before the Court, and it was for the Court to say whether what he did to discover the residence of the endorser was due diligence or not.

Suppose, therefore, the Court erred, as alleged in the first bill of exceptions, then the notice to the appellant was insufficient. It is true that the note is dated at Baltimore, and it is also true that Judge LE GRAND in *Sasscer vs. Whitely, et al.,* 10 *Md.,* 102, decides that the endorser is presumed to reside at the place of its date, and a notice to him there was sufficient, although all the authorities on which his decision is rested apply the principle to the presentation and demand of payment. But whilst he so decides he lays down also—the other principle controlling a notice so given, that there must first be diligence and thoroughness of enquiry to discover the residence of the endorser. *There must be due diligence. Story on Prom. Notes, sec.* 236 ; *Nailor vs. Bowie,* 3 *Md.,* 257 ; *Sasscer vs. Whitely, et al.,* 10 *Md.,* 98.

The duty of the Notary under such presumption is not different from what it would be if the endorser *actually* resided at the place of date, both Notary and endorser residing in a large commercial city. In the latter case it would not be sufficient for the Notary to content himself simply with sending through the post office to the endorser a notice, addressed generally to such city. Other

circumstances would be necessary to make such a mode sufficient, viz., that a mail or penny post went to the residence of the endorser, and that by the usual course of such mail or penny post the endorser would have received the notice on the day after the demand and non-payment of the note. On all these circumstances the proof is silent. *Walters & Harvey vs: Brown*, 15 *Md.*, 285.

The prayer of the defendant should have been granted.

The defendant proved that, when the note matured, he resided in Baltimore County, at Greenwood, and such was his post office where he got his mail; and that he did not receive the notice.

The witnesses, Korytowski and wife, both testify that they were living on the day of the maturity of the note, and before and since at the public house, corner of Madison and Ensor streets, the last residence of the appellant, and that they were able to give anybody who desired it the address of the appellant at Greenwood, and if the Notary had asked them for such address he would have gotten it; that either one or the other of the witnesses was always present and able to give such address.

This testimony completely rebutted the *prima facie* case presented by the plaintiffs, resting alone as it did on the notarial certificate.

The structure of the prayer is unobjectionable under the circumstances of this case. The defendant pleaded specially the want of notice. The signature was admitted, and the whole testimony related to the single issue, whether the appellant had received notice or not. There could, therefore, be no doubt in the mind of the Court below, nor is there from the record, that the prayer related to a failure of evidence upon the single issue of notice to the endorser. Under the circumstances of this case, the prayer is not obnoxious to the unfavorable decisions of this Court respecting similar instructions. *Causa cessante cessat lex.*

Reier *vs.* Strauss, *et al.*

*Isidor Rayner,* for the appellees.

The Act of 1837, ch. 253, making a notarial protest evidence in cases of this sort, was not intended to limit or qualify the effect of a notarial certificate at common law, but as was said by this Court in *Whiteford vs. Burkmyer and Adams* in 1 *Gill,* 149 *and* 150, was obviously designed to *extend* the credit which by the courtesy of commercial nations had *previously* been given to the certificate of a Notary Public, and make the certificate evidence as well to inland as to foreign bills or notes. If then at common law the recital in a protest, that the Notary had made diligent search to ascertain the whereabouts of an endorser, would be admissible as *prima facie* evidence of that fact in a suit upon a foreign bill or note, it follows, that under the construction placed by this Court upon our Act of Assembly, this recital in the certificate would now be evidence in a suit upon an inland bill or note. The question then resolves itself into this : " Was at common law the notarial protest evidence of the fact that the Notary had made diligent search to ascertain the whereabouts of an endorser if such fact be recited upon the face of the certificate?" It unquestionably was evidence of that fact, for the reason that *to make diligent search for an endorser was strictly within the scope* of a Notary's official duty, and full faith and credit were therefore given to a protest in which he recited that he had performed an act which it was his duty to perform as Notary. It is a Notary's duty to make search and enquiry for the residence of the parties to the note in order to make proper demand and give proper notice, and when he does this, and certifies to it, the highest authorities unite in saying that this certificate shall be evidence of that fact if it recite the same. 1 *Parsons on Notes and Bills,* 635, 639 ; 2 *Parsons on Notes and Bills,* 498 ; 1 *Wharton on the Law of Evidence, sec.* 123 ; 2 *Daniel on Negotiable Instruments,* 17.

If we admit for the sake of argument that that portion of the protest excepted to was improperly admitted in evi-

Reier *vs.* Strauss, *et al.*

dence, it will by no means follow that the judgment is to be reversed on that account. A glance at the record will satisfy this Court that it was not necessary for the Notary to make any search or enquiry for the residence of the endorser, and that a letter mailed to him through the Baltimore Post Office, and directed to him at Baltimore, was all that the law required, and that diligent search and enquiry by the Notary was altogether unnecessary, and the recital of such fact entirely superfluous in the certificate.

The following facts contained in the record, sustain this proposition: When the note was given the endorser was a resident of Baltimore City; had been in business there for fourteen years; gave the note in Baltimore City; and continued to reside there for some time after the note was given.

The holders had no knowledge or information of any sort, at the time said note was protested or at any time before, that the defendant had removed from Baltimore City; furthermore the defendant permitted his name and sign in large letters to remain over the door of his place of business in Baltimore City; and the appellees believed that he still lived there, and had nothing to induce them to make any enquiry as to his removal.

His name continued to remain in the Directory of Baltimore City as a resident thereof, living at the south-east corner of Madison and Ensor streets during the whole of the year 1878.

The defendant went regularly to this place of business in Baltimore City, for the purpose of receiving his letters and other things left there for him.

This is the uncontradicted testimony in the case and the authorities are clear that, in a case of this sort, a notice regularly mailed and directed to the defendant at Baltimore City is all that the law requires. 2 *Daniel on Negotiable Instruments, p.* 75, *sec.* 1032, *also pp.* 65 *and* 73; 1 *Parsons on Notes and Bills,* 496; *Ward vs. Perrin,* 54 *Bar-*

*bour*, 89; *Bank of Utica vs. Phillips*, 3 *Wendell*, 408; *Requa vs. Collins*, 51 *New York*, 148; *Utica vs. Davidson*, 5 *Wendell*, 588; *Bank of Utica vs. Bender*, 21 *Wendell*, 643; *Harris vs. Memphis Bank*, 4 *Humphreys*, 519; *Bank of Columbia vs. Lawrence*, 1 *Peters*, 578; *Walters and Harvey vs. Brown*, 15 *Md.*, 285; *Staylor vs. Ball and Williams*, 24 *Md.*, 183; *Sasscer vs. Whitely and Stone*, 10 *Md.*, 98.

It being therefore settled that upon the facts stated in the record, the judges sitting as a jury, were bound to find a verdict for the plaintiffs, the judgment in this case will not be reversed even if that portion of the protest referred to in the first exception should have been excluded. *Williams, Executor of McLean vs. Higgins*, 30 *Md.*, 404; *The Harmony Fire and Mar. Ins. Co. vs. Hazlehurst*, 30 *Md.*, 384; *Chew's Adm'r vs. Beall*, 13 *Md.*, 348; *Goldsborough, Adm'r, vs. Cradie*, 28 *Md.*, 477; *Hayes vs. Wells and Babbit*, 34 *Md.*, 512; *Consolidation Coal Co. vs Shannon*, 34 *Md.*, 144; *Bannon vs. Warfield*, 42 *Md.*, 22; *Wyeth vs. Walzl*, 43 *Md.*, 426; *Staylor vs. Ball and Williams*, 24 *Md.*, 183.

The conclusive objection to the granting of the appellants' prayer consists in the fact, that it has been over and over again decided that a prayer of this sort is too general, presents no question for the consideration of this Court and cannot be reviewed upon appeal. *Kent vs. Holliday*, 17 *Md.*, 387; *Warner vs. Hardy*, 6 *Md.*, 525; *Hatton vs. McClish*, 6 *Md.*, 407; *Dorsey, et al., Ex'rs, vs. Harris' Adm'r*, 22 *Md.*, 85; *Kinsley and Haslup vs. Minnick*, 43 *Md.*, 112; *Blair vs. Blair*, 39 *Md.*, 556.

BOWIE, J., delivered the opinion of the Court.

Two questions of commercial law, of frequent occurrence, and much practical importance to the public, are presented by this record.

The first, is the extent to which the certificate of a Notary Public is admissible as *prima facie* evidence, in

actions upon domestic bills and promissory notes, between the holder and endorsers.

The second, in what cases notice of presentment, and demand and non-payment, through the post office to the endorser is sufficient notice in law.

The appellant is the endorser of a promissory note, dated Baltimore, February 4th, 1880, executed by F. & J. Everett, for the sum of $250, payable to ———, endorsed by the makers and the appellant, and delivered to the appellees.

At the trial below, two bills of exception were taken by the appellant; the first, to the admissibility as evidence, of a portion of the notarial certificate of protest, including the words "after diligent search and inquiry to ascertain his whereabouts."

The second, to the refusal of the Court to grant the appellant's prayer, "that there is no sufficient evidence to entitle the plaintiff to recover in this case."

The objection to the words of the protest, above cited, was based on the theory, that the protest "*per se*" was not competent evidence of any facts, but those of presentment for acceptance or payment, (as the case may be) and refusal and notice; and further, that if other facts could be proved by the certificate of the Notary, his statement of a conclusion of law, was not admissible.

These positions are so well sustained by the decisions of this Court, and others, cited by the appellant's counsel, it is almost superfluous to refer to them.

The object and scope of the Act of 1837, ch. 253, now codified as secs. 6 and 7, Art. 35 of the Revised Code, are stated very succinctly and clearly in *Whiteford vs. Buckmyer & Adams,* 1 *Gill,* 127, and *Graham vs. Sangston,* 1 *Md.,* 66.

In the former case it is said, its design was to extend to inland bills and promissory notes, the credit which by the courtesy of commercial nations, had been given to the

certificate of a Notary Public. The certificate of a Notary Public, has been received as *prima facie* evidence of the presentment by him for acceptance or payment, and of his protest of the bill for non-acceptance and non-payment.

In the subsequent case, referring to the same Act, it is declared, "The Act of 1837, ch. 253, in no manner alters the law in regard to the character or necessity of the notice. The whole office of this Act is to make the protest of the Notary *prima facie* evidence, that notice has been given in the manner, and of the character described in the protest, leaving the question of sufficiency of the notice to be determined by law, as it was prior to the passage of the Act. 1 *Md.*, 66.

These cases do not positively decide, that the certificate shall be *prima facie* evidence of no other fact stated therein, but the negation and exclusion of all other facts, is clearly implied. As a statutory modification of a common law rule of evidence, "that the best evidence in the nature of the case should be produced," the Act, making certificates, *prima facie* evidence, would be confined to the specific objects for which it was enacted, as it is obvious, it would be dangerous to enlarge it, and difficult to impose any other limitation, if the expressed objects are transcended.

The Code as Revised, Art. 35, secs. 6 and 7, enacts " A protest duly made by a Notary Public of a promissory note for non-payment, or of a bill of exchange, whether foreign or inland, for non-acceptance or non-payment, shall be *prima facie* evidence of such non-acceptance or non-payment, and of the presentment of such note for payment, or of such bill for acceptance or payment, at the time and in the manner stated in the protest."

Sec. 7. " When such protest shall state that notice of such non-payment or non-acceptance has been sent or delivered to the party or parties to such note or bill, and

the manner of such notice, such protest shall be *prima facie* evidence that such notice has been sent or delivered in the manner therein stated." The protest, then is limited as evidence; 1st, to the fact of presentment for acceptance or payment; 2nd, the non-acceptance or non-payment at the time and in the manner stated in the protest; 3rdly, if the protest states that notice of non-acceptance or non-payment has been sent or delivered to the party or parties to such note or bill, and the manner of such notice, such protest, is *prima facie* evidence, that such notice has been sent or delivered in the manner therein stated.

In the case of *Weems vs. The Farmers' Bank of Md,* this Court confirming and repeating substantially the interpretation given the Act of 1837, making protests *prima facie* evidence, given in the preceding cases, declared further, that it does not make the protest, any evidence of other collateral, or independent facts, that it may contain, especially, when such facts are not necessarily within the personal knowledge of the Notary, or are of such a character, as could not be established by his testimony, if he were produced as a witness.

The clause of the protest excepted to, comes within both classes of facts, excluded by law; it refers to matters collateral and independent of the presentation and refusal of payment, and is a conclusion of law, which the Notary could not legally draw or establish by his own testimony.

The appellees, admitting for the sake of the argument, that the portion of the protest excepted to, was inadmissible, yet contend that the error was immaterial, as the appellant was not injured by the testimony; that it was not necessary for the Notary to make any search or inquiry for the residence of the endorser; that a letter mailed through the Baltimore postoffice to his address, was all that the law required; hence the recital of diligent search and inquiry was superfluous in the protest. In other words, that the

defendant was by his residence in Baltimore, at the date of the note, his continuance there some time after, his non-removal of his sign from his place of business, etc., precluded from insisting on being regarded as a non-resident endorser, the appellees having had no knowledge of his removal, and every reason to regard him as still living in the city.

Conceding the force of this argument, the appellant replies, that the appellees did not use due means to notify him as endorser, assuming that they had reason to believe the defendant continued to reside in the city.

The true question before us is, did the appellees use due diligence, under the circumstances of this case, to notify the appellant of the demand of payment, and refusal by the makers so as to bind the appellant as endorser.

The law does not require actual notice, but due diligence to give notice. The rule is laid down by STORY in his work on Promissory Notes, to this effect:

"In many cases, where the actual residence of the party entitled to notice cannot, after reasonable inquiries, be ascertained, it may, perhaps, be sufficient to direct the letter of notice to the place where the note bears date, or to the place where the indorser was residing at the time of his indorsement, if no change of residence is known, or to the place where the agent or other party procuring the discount at the time states the indorser resides; or even to a place where the indorser does not reside, if another party to the note, upon inquiry, states that to be his residence. *A fortiori*, if upon diligent inquiries information is obtained of the residence of the indorser in a place where he does not actually reside, and the notice is directed accordingly to that place it will be sufficient to bind the indorser," etc.

"Where an indorser of the note points out a particular place to which notice shall be sent to him, it will be sufficient that the notice be sent to him at that place,

Reier *vs.* Strauss, *et al.*

although it may not be his domicil or place of business. * * * * Thus where an endorser, living in Auburn, wrote after his name 'Auburn P. O.,' a notice left at the post-office in that place was held sufficient; although otherwise it would have been necessary to have given personal notice." *Story Prom. Notes (6th Ed.,) sec.* 344; *Baker vs. Morris,* 25 *Barb.,* 138.

The evidence in this case shows, that the appellant, the endorser, at the time of the date and endorsement of the note, resided in Baltimore, having a well-known stand, and sign designating his place of business, and his name and residence in the City Directory.

A few months afterwards, before the maturity of the note, he removed from the stand, into the country, leaving his sign standing, and a tenant in possession, to whom his address was known, and returned weekly to his former place of business, where he received letters, although his post office was " Greenwood, Baltimore County."

"As a general rule, where the endorser and the party required to give him notice, reside in the same town or city, the notice must be given him personally or at his domicil or place of business, and notice at the post office will not be sufficient unless shown to have actually reached him." *Walters & Harvey vs. Brown,* 15 *Md.,* 285; *Bell vs. Hagerstown Bk.,* 7 *Gill,* 223.

" This rule is qualified by the usage of large commercial towns, where, it is said, the uniform practice is to reach the party to be affected with notice through the post office, when both reside within the limits of the penny post, but it must be shown in those cases that the notice has been delivered in time to reach the endorser before the expiration of the day following the dishonor." *Ibid.*

This Court, in *Whitridge vs. Rider,* 22 *Md.,* 548, reiterated the well-established commercial canon, " that if the holder of a promissory note does not know where the endorser or other party to be notified lives, but can inform

himself by reasonable endeavors or diligent inquiry, he must do so. An endorser is entitled to strict notice, by which is meant that reasonable diligence shall be employed and reasonable efforts made to give it. The diligence employed should be such as men of business usually exercise when their interest depends upon obtaining correct information."

The Supreme Court of the United States, in the case of the *Bank of Columbia vs. Lawrence,* said : " The general rule is that the party whose duty it is to give notice in such cases, is bound to use due diligence in communicating such notice. But it is not required of him to see that the notice is brought home to the party. He may employ the usual and ordinary mode of conveyance, and, whether the notice reaches the party or not, the holder has done all the law requires of him." 1 *Peters' Rep.,* 578.

" It seems at this day to be well settled that, when the facts are ascertained and undisputed, what shall constitute due diligence is a question of law." *Ibid.*

It is difficult to lay down any universal rule as to what is due diligence in respect to notice to endorsers. Many cases must be decided upon their own particular circumstances, etc. *Bk. of U. S. vs. Carneal,* 2 *Peters,* 543.

The appellant, being a resident of the City of Baltimore (the place of the execution and of the date of the note,) at the time of its execution and date, and continuing to reside there some time afterwards, and retaining his sign at his place of business and his name in the City Directory, in the absence of proof of knowledge to the contrary on the part of the holders, may reasonably have been presumed by the notary to be still a resident of the city, and treated as such in giving him notice. It was ruled by this Court, in *Sasscer vs. Whitely & Stone,* 10 *Md.,* 98, that where a note is dated at a particular place, and no other place designated as that of its negotiation and payment, the presumption is that the maker resides where the

note is dated, and that he contemplated payment at that place. The reason of the rule applies as well to the endorser as the maker, as regards notice of demand and refusal.

The evidence of the appellees, showing the exercise of due diligence in giving notice of demand and refusal to the appellant, he was not prejudiced by admitting the portion of the protest excepted to, and, therefore, the error of the Court below in admitting it is no ground of reversal.

Though the prayer, which is the subject of the second bill of exceptions, may have been intended as a demurrer to the evidence upon the issue joined on the third plea, yet, as it contains no special reference to the failure of evidence on that, or the other issues, and is a general denial of the plaintiff's right to recover, without pointing out any particular error or omission in the proof, or raising any definite question as to its sufficiency, it was properly refused. *Dorsey, et al., Ex'rs, et al. vs. Harris Adm'rs, etc.,* 22 *Md.,* 85.

*Judgment affirmed.*

(Decided 30th June, 1880.)